FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2015 FEB -6  PM 1: 38

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

MONICA SHAW,

       Plaintiff

CASE NO.:

6:15-CV-181-ORL-41-TBS

vs.

WALT DISNEY WORLD PARKS AND
RESORTS, a Corporation,
SNI COMPANIES CORPORATION
d/b/a STAFFING NOW, a Corporation,

       Defendant(s).

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

      Monica Shaw, Plaintiff herein, files this Complaint against WALT DISNEY
WORLD PARKS AND RESORTS and SNI COMPANIES CORPORATION d/b/a
STAFFING NOW, Defendants herein, and alleges:

      1.      This is an action under Title VII of the 1964 Civil Rights Act as amended,
42 U.S.C. Section 2000e-2(a) and Florida Civil Rights Act 760.01 et seq. for unlawful
employment practices on the basis of race, color and retaliation. Plaintiff suffered said
damages as a result of being subjected to race and color discrimination and from being
unlawfully retaliated against and terminated by Defendants after Plaintiff complained
about her treatment on countless occasions.

## JURISDICTION AND VENUE

      2.      Defendant is a foreign corporation/entity engaged in trade and commerce
and doing and authorized to do business in the State of Florida in Orange County, Florida
and within this Court's District.

3.      This court has subject matter jurisdiction pursuant to Article III, Section 1 of the U.S. Constitution and 28 U.S.C. sections 1331, 1332 and 1343.

4.      This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

5.      All conditions precedent to jurisdiction have occurred or been complied with: a charge of discrimination was filed with the Equal Employment Opportunity Commission within three hundred days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter. (See Exhibit "A")

6.      Venue is proper in U.S. District Court, Orlando Division, Orlando, Florida, because Defendant's principal place of business in Florida is located in Orange County, Florida and all actions material to the complaint have occurred in Orange County, Florida.

## PLAINTIFF

7.      The Plaintiff MONICA SHAW is a natural person residing in Orange County Florida and was doing so at all times material to this action. Plaintiff worked as a Contract Administrator with Defendant Walt Disney World Parks and Resorts through Defendant SNI Companies Corporation d/b/a Staffing Now. On November 12, 2012, Plaintiff was employed with Defendant as a Contractor Administrator and on February 28, 2014, Plaintiff was terminated by Defendant Walt Disney World Parks and Resorts.

**DEFENDANTS**

8.      The Defendant WALT DISNEY WORLD PARKS AND RESORTS, is

an active for-profit corporation and/or entity doing business in Florida with its

principal place of business at 1825 Live Oak Lane, Lake Buena Vista, FL 32830.

9.      The Defendant SNI COMPANIES CORPORATION d/b/a STAFFING

NOW, is an active for-profit corporation and/or entity doing business in Florida with

its principal place of business at 20 Orange Avenue, Suite 705, Orlando, FL 32801.

**FACTS**

10.      Plaintiff was hired to work for Disney on November 12, 2012. Both

Rhonda and Liz Marzak were impressed with how quickly Plaintiff was able to navigate

and catch on to the process. The only problem was that Plaintiff did not have a printer

readily available, so Plaintiff was forced to make several trips every day to the printer just

to print off all the work. Hence, Plaintiff was constantly navigating back and forth to the

printer since Plaintiff's entire job was based on printing, scanning and copying. Plaintiff

was the only one without a printer; nevertheless, the non-black co-workers who came in

after Plaintiff all received printers.

11.      On or about July 2013, Plaintiff's department held a luncheon and one of

the individuals by the name of Joe Fenlon (White) had to leave because there was a

phone call about "bees" being out of control. When he returned, he told us that the

African "bees" were very aggressive and out of control so they had to send the European

Bees in to control them and Peggy Arthur (White), Administrative Assistant at Disney,

said, "Well they aren't that much different from us," then laughed and looked at me.

12.     On September 11, 2012, the team was sent an email about office moves. The email listed me out to use the computer whenever someone would jump off of it, yet all the non-black co-workers had a permanent computer with a printer.

13.     On or about September 19, 2013, the team was going to use and set up their computers at the conference room. Plaintiff noticed that the conference room had enough space for all fourteen (14) computers to be hooked up. However, Peggy Arthur asked all the non-black co-workers, "Where would they like their computers to be set up?" At that time, Plaintiff overheard someone ask, "what about Monica?" and her response was "her space is too small so it doesn't matter." Interestingly enough, the guy who installed the computers asked Plaintiff anyway, and Plaintiff got it set up at a reasonable space. Plaintiff feels that she was given the smallest space and was treated differently due to the color of her skin.

14.     On or about September 11, 2013, Plaintiff received an email requesting a picture for the holiday card. Plaintiff was excited about this request because she was not included in the previous Holiday Card. Plaintiff submitted her picture on the 19th day of September, 2013. The Holiday Card was published on or about November 11, 2013. Surprisingly enough, all the non-black co-workers' caricatures were featured; yet Plaintiff's picture was excluded and censured from the Holiday Card. Additionally, she was the only one who did not receive an email of the Holiday Card. On the other hand, there were six (6) non-black individuals who came in to the department after Plaintiff, and they were all featured and published on that Holiday Card. Plaintiff was humiliated, excluded and censured from the Holiday Card simply because of the color of her skin.

15.     On September 27, 2013, Plaintiff explained to Ken Janik (White) what was wrong and how she was feeling. Plaintiff asked him why she was not included in more of the informational things, and said to him that those things would help her be more productive and familiar with aspects of the job. Plaintiff told Mr. Janik that she felt minimized, and not being utilized for what she was told and brought under. He told Plaintiff to get with Brenda (White) and schedule a meeting with Henry D (White), Rhonda Wyszynski (White), Ned W (White) and Liz Marzak (White). However, I ended up going back to Ken Janik because when I requested the meeting the individuals who were to be involved kept rejecting the invite so he told me to have Brenda (receptionist) send it on his behalf. Interestingly, my non-black co-workers were provided training and continued to be trained about the job, and trained about the procedures, protocols and standards relative to their jobs. Yet, when Plaintiff tried to explain about how she was being treated it was always dismissed, and she was excluded from training and/or events.

16.     October 15, 2013, Ken Janik informed me that the Vice President's Administrative Assistant, Elizabeth Ward who watches the phone after the Receptionist leaves will no longer be covering the thirty (30) minutes for when the receptionist leaves for the day because the Disney Springs stuff may get her busier and she may not have the time to cover the phone for thirty (30) minutes. He went on to say that Plaintiff needed to cover the phones for the receptionist from 4:30 to 5:00 p.m. and her lunch breaks, despite Plaintiff's concerns about her school schedule or why they granted Plaintiff the schedule change in the first place. Now this change meant that Plaintiff was taking on another role which was sort of an inconvenience. Plaintiff tried to look at it as a positive by thinking this was part of a confirmation that they were setting for Plaintiff to become permanent.

The inconvenience was that whenever Brenda needed a break, leave early, or take vacations this would cause Plaintiff to stop what she was doing to collect all her work, which includes, files, agreements and other documents up to the front desk, where she then logged in one computer to utilize her emails but would have to run over to use Brenda's computer to see the Calendar for the staff. This whole new add on was complicated because Plaintiff now had to do all of her work, which caused her to run back and forth, search, create, update, input, answer phones, escort people to conference rooms, serve drinks, answer questions for callers, transfer calls to staff and checked schedules. None of Plaintiff's non-black co-workers had to do this.

17.     On October 15, 2013, Plaintiff received a call from Ashley Dones (White) at the staffing agency between 5:30-6:00 p.m. about a complaint of her attire. She stated that there was no big concern but whatever Plaintiff wore, not to wear again and reinstated that they still thought Plaintiff was doing a great job. Plaintiff was stunned and confused and was at a loss of words because she had no idea why no one said anything to her. Plaintiff was embarrassed that she had to hear this form the staffing agency after being there for eleven (11) months. Plaintiff was always told that she was doing a great job.

18.     On October 16, 2013, Plaintiff was so distraught about the whole attire issue that she decided to send Ashley Dones an email with the intent to understand what was wrong with her attire since she had not worn anything different since she was hired. Yet, Ashley Dones did not respond. Plaintiff, however, receive an email from Shanna Ramirez telling her to call her during lunch. According to Shanna, the issue was a pair of shoes "that alleged to look like something that should be worn in a club" (See Exhibit B).

Plaintiff told her that she had no idea what anyone could have meant by that because all of her shoes were flats or pumps (closed toed and open toed); and she has worn every pair over and over again for the last eleven (11) months. At that moment, Plaintiff told her that "the staff was being a little funny towards her," and reminded her that Plaintiff's contract end date was coming up, and Plaintiff had not heard anything from anyone. Soon thereafter, Shanna called back and told Plaintiff that my contract had been extended to May.

19.     On October 16, 2013, I approached Ken Janik and asked, "Ken I haven't done anything to make you feel like you couldn't come and talk to me, have I?" He said, "well what do you mean?" I told him how the staffing agency called with a complaint and how I was kind of embarrassed because Plaintiff didn't hear it from him. He says he told the staffing agency it wasn't a big deal and then goes on to say Plaintiff wore a pair of shoes that were spiked shoes. Plaintiff told him that she does not own a pair of spiked pumps. He said it is the height that was a problem. He immediately pulled up Disney's online Look Book to show me that the shoes were supposed to be within a certain inch. Plaintiff reminded Ken that the paperwork she signed upon entering Disney and Disney's 2013 Look Book did not preclude the type of shoes Plaintiff wore. As he scrolled down, he saw that Plaintiff was correct. My non-black co-workers were never complained of, chastised nor embarrassed for wearing clothing that complied with Disney's Look Book.

20.     At that instant, Ken Janik began to talk negative about Plaintiff's hairstyle, and proceeds to the hair portion of the Look Book. Stunned, Plaintiff asked "what is the problem with my hair, it is always in line with the policy, it's either wavy for the most part or in an "updo" (only had three "updos" the entire one (1) year and three months)?"

(See Exhibit C). Mr. Janik then scrolls to see that braids and "updos" are permitted, as long as they are tasteful. Plaintiff's non-black co-workers were never complained of, chastised nor embarrassed for a hairstyle that complies with Disney's Look Book.

21.     On October 29, 2013, Plaintiff walked into her office to find her window decal sticker ripped off the wall, balled up, stepped on and on the floor. There was no way that could have happened without someone actually pulling it off the wall, crumbling it up and stepping on it. Plaintiff checked with the receptionist to ask her if anything happened the day prior. The receptionist mentioned that painters were in the building. Plaintiff asked, "Why we were all not informed," and she said that she thought everyone was sent an email. Plaintiff never received the email.

22.     Later that day Liz Marzak stopped by to see the Sticker crumbled on my desk, and asked what happened. Plaintiff told her what she saw when she came in. Plaintiff asked Liz Marzak if she could check to see if an email was sent to Plaintiff, but she never got back to Plaintiff. Plaintiff asked her again and she said that she told Peggy what had happened and that Peggy Arthur would get back to Plaintiff, yet Plaintiff's complaints were, once again, dismissed. Plaintiff just could not get pass thinking that the painters would actually rip things off the wall without some kind of approval. Plaintiff only had the window decal up for about two weeks before it was destroyed. No other non-black co-workers' had their window decal destroyed.

23.     On November 4, 2013, Plaintiff received a communication notifying her that the Contractor Administrator – meeting pertaining to her duties – meeting had been cancelled. Plaintiff actually thought the entire meeting was canceled, but later found out that they actually just canceled her out of the meeting. Plaintiff asked Ken Janik why she

was canceled out of the meeting that we initially agreed upon concerning the work

Plaintiff does. He said he talked it over with the team and decided that that was best, and

Plaintiff asked how that was fair or beneficial to her if she was not able to comment on

what they were all suggesting or saying about Plaintiff. Ned (White) jumped in to say not

to worry and they would eventually have another one where we would talk about more

things and Plaintiff would be included in that one. Plaintiff also found out that George R.

(White), project manager who has nothing to do with her, and Peggy Arthur were

included in that meeting.

24.     On November 25, 2013, Plaintiff received a canceled invite for the holiday

reception party at Splitsville; so later when Plaintiff got the chance she asked the

receptionist if the Company was rescheduling the holiday party. The receptionist had no

idea what Plaintiff meant, so Plaintiff told her about the canceled invite. The receptionist

went through the calendar and saw that Plaintiff was the only one who received the

cancelation. Plaintiff received the invite to go to the holiday party on July 23, 2013. All

the non-black co-workers enjoyed this event.

25.     On December 05, 2013, Plaintiff was told by Rhonda that Plaintiff may

have sent two original legal documents to Legal when only one should have went to

Dennae DeCarlo (Legal Department), so Plaintiff sent an email asking her if she could

check on a particular agreement from an OP. Plaintiff then received a phone call from

Rhonda who said "Dennae prefers to deal with me only." She wanted Plaintiff to know

that for future concerns. While I was on this call, Dennae actually replied back and said

verbatim, "Hi.  I spoke with Rhonda and I do have 2 originals of the Phineas & Ferb

Concession Agr.  Rhonda has a courier coming to pick up 1 of those originals." Plaintiff

did not know why she would email me back if she only wanted to deal with Rhonda especially since Rhonda relayed the message.

26.     On December 6, 2013, our team had a box up for toys for tots, Liz was overseeing this activity. At the end, she sent us all an email to say thank you and we were to meet to have dinner and help do some volunteer work for the toys for tots donation drive. Plaintiff was told by Ken Janik two (2) days before the event that Plaintiff could not go and Plaintiff had to stay home. Plaintiff asked, "why couldn't I go?" Ken told me it was because I was a temp. Plaintiff could not understand how Plaintiff could have the option to use her own money to donate a gift but have to lose a day's work when they were all working. Plaintiff went to all of the other events before, but for some reason Plaintiff was not able to go or be a part of this or anything else. Yet, Plaintiff's non-black co-workers were never precluded from attending any events.

27.     On January 31, 2014, for the Chinese New Year and all the non-black co-workers had the option to go except me. Plaintiff was excluded to the previous Chinese New year, as well.

28.     On December 11, 2013, Plaintiff met with Shanna to tell her what was going on and what Plaintiff was experiencing and feeling. Plaintiff told her it was not right the way Plaintiff was being treated. Shanna told Plaintiff to talk to Ken Janik, and Plaintiff told her she had spoken to Mr. Janik several times. Plaintiff told her enough was enough which was why Plaintiff came to her. She said she would look into it and send him an email of how things were. Plaintiff checked with her a few weeks later and she said he never responded to her. Every time that Plaintiff tried to explain how she was being treated by her non-black co-workers, it was always dismissed.

29.     On February 17, 2014, Plaintiff was excused with a doctor note from work for a couple of days due to a very bad ear infection. Upon her return, Peggy Arthur asked Plaintiff, "you sure a roach didn't crawl in your ear?" Plaintiff never heard any white colleagues asked such demeaning questions regarding an illness.

30.     On February 21, 2014, we had a breakfast in the conference room. As we were cleaning to leave, Peggy Arthur asked Plaintiff if Plaintiff ate "Chitterlings." Plaintiff was the only one she asked that to. Plaintiff never heard any white colleagues being asked such stereotypical and racist comments about their diet.

31.     On February 25, 2014, Plaintiff received an invite to meet with Ken on Friday at 3:30 p.m. He never mentioned what the meeting was about and there were no directions for it. Plaintiff asked if she needed to bring anything and he said no. Plaintiff sent an email to Shanna Ramirez at the staffing agency wondering if she finally heard something back. She emailed Plaintiff back informing Plaintiff that he had not responded. She said she would contact him again to see if she could find out. Plaintiff told her since she has not done anything or heard anything from our last meeting that Plaintiff was going to again mention all of the concerns Plaintiff was having about how she was being treated. She did not respond. Every time that Plaintiff complained about the way she was been mistreated by her non-black co-workers, Plaintiff never received a response; they were always dismissed.

32.     On February 28, 2014, at exactly noon my computer kicked me off and told me I did not have credentials. Ken came up front, as I was getting up. He shut the door and said (verbatim) "we no longer need you; we decided we are going to go in a different direction and it is nothing that you have done wrong." The meeting lasted for 15

minutes ending with him saying he wish me the best and wanted me to go back to work, making a list of things that are done and needed to be done. Plaintiff emailed Shanna and said that they let her go. Plaintiff also said it was very strange that the staffing agency would not know about this. She responded and said she had no idea and that she was very sorry for what happened.

33.     Plaintiff have watched six people come in and one VP leave and they were all celebrated; the department would have a cook out or food brought in; they would have words to share, cards to sign and things to that nature. This was done for any occasion including birthdays, holidays, and just simple random days; Plaintiff was shocked as to how things were done with her. Plaintiff was not given a notice that her job was over until the day it ended. Plaintiff was there a year and three months and put in more work than probably half of her non-black co-workers; yet, for some reason was told in a random meeting on a Friday that that was going to be her last day. No one told Plaintiff "goodbye," no "thank you for working hard," no food or a group card that they continuously do for all the non-black co-workers.

34.     During her employment period, Plaintiff experienced ridicule, mockery, abuse, humiliation, inappropriate racial jokes, embarrassment and harassment because of her race and color of skin. Plaintiff did everything that she was told to do without any help; and invested one year and three months of her time. Plaintiff endured all of this because she hoped for a long lasting and bright future at Disney. Plaintiff witnessed six (6) individuals (all white) get hired in that department after her arrival, and none were treated the way Plaintiff was treated.

35.     Plaintiff has employed IRIZARRY MENDEZ PL and THE ALLEN
FIRM, P.A. for representation in this action, and has agreed to pay a reasonable attorney
fee to IRIZARRY MENDEZ PL and THE ALLEN FIRM, P.A.

## COUNT I: VIOLATION OF TITLE VII VIOLATIONS

## PLAINTIFF AGAINST WALT DISNEY WORLD PARKS AND RESORTS

### ("Race discrimination" "Racial Harassment" "Retaliation")

36.     Plaintiff adopts by reference, as if set out fully and completely in this
Count, the following statements of this Complaint:  Paragraphs 1 through 35.

37.     Plaintiff has exhausted her administrative remedies as described in
paragraph 5 above and therefore all conditions precedent to filing suit under Title VII
have been met.

38.     Defendant, WALT DISNEY WORLD PARKS AND RESORTS, by and
through Defendant's agents, engaged in unlawful employment practices involving
Plaintiff because of her race and color.

39.     Defendant, WALT DISNEY WORLD PARKS AND RESORTS, by and
through Defendant's agents, discriminated against Plaintiff in connection with the
compensation, terms, conditions and privileges of employment or limited, segregated or
classified Plaintiff in a manner that would deprive or tend to deprive her of any
employment opportunity or adversely affect her status because of Plaintiff's race and
color in violation of 42 U.S.C. Section 2000e-2(a).

40.     Defendant, WALT DISNEY WORLD PARKS AND RESORTS, by and
through Defendant's agents, classified Plaintiff in a manner that deprived her of an equal
employment opportunity that was provided to other non-black employees similarly

situated in violation of 42 U.S.C. Section 2000e-2(a).

41.     Plaintiff, a black female, was subjected to **harassment** because of her race and color in that Plaintiff was subjected to ongoing and constant **racial harassment** in that she was the target of derogatory comments and remarks as described in paragraphs 11, 13, 15, 17-20, 23, 25, 26, 29, 30, 32 and 34 above. Plaintiff complained, yet her complaints were dismissed, and no remedial or disciplinary actions were taken.

42.     Plaintiff, a black female, was subjected to **discrimination** because of her race and color in that Plaintiff was subjected to ongoing and constant **racial discrimination** in that she was the target of discriminatory acts and/or omissions as described in paragraphs 10 through 34 above. Plaintiff complained, yet her complaints were dismissed, and no remedial or disciplinary actions were taken.

43.     Plaintiff alleges that WALT DISNEY WORLD PARKS AND RESORTS, instituted a campaign of retaliation which ultimately concluded in her employment termination. This retaliation was and is due to Plaintiff exercising Plaintiff's rights by complaining on numerous occasions and opposing a racial discriminatory practice against her person because of her race and color of skin.

44.     There was a direct casual connection between Plaintiff's protected activities and Defendant's subsequent adverse actions against her. As a direct and proximate result of the aforementioned violations, Plaintiff has suffered physical injuries, loss of income, loss of benefits, loss of reputation, embarrassment and humiliation, inconvenience, loss of enjoyment of life, emotional pain and suffering, and severe emotional distress and anguish.

**WHEREFORE**, Plaintiff demands the following relief: compensatory damages, lost benefits, lost income including back pay and front pay, prejudgment interest, attorney's fees and costs pursuant to Title VII, a trial by jury and any other relief this court deems just and proper.

## COUNT II: VIOLATION OF SECTION 760, FLORIDA STATUTES

## PLAINTIFF AGAINST WALT DISNEY WORLD PARKS AND RESORTS

### ("Race discrimination" "Racial Harassment" "Retaliation")

45.     Plaintiff adopts by reference, as if set out fully and completely in this Count, the following statements of this Complaint:  Paragraphs 1 through 35.

46.     Plaintiff has exhausted her administrative remedies as described in paragraph 5 above and therefore all conditions precedent to filing suit under the Florida Civil Rights Act, 760.01 et seq. have been met.

47.     Defendant, WALT DISNEY WORLD PARKS AND RESORTS, by and through Defendant's agents, engaged in unlawful employment practices involving Plaintiff because of her race and color.

48.     Defendant, WALT DISNEY WORLD PARKS AND RESORTS, by and through Defendant's agents, discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status because of Plaintiff's race and color in violation of 42 U.S.C. Section 2000e-2(a).

49.     Defendant, WALT DISNEY WORLD PARKS AND RESORTS, by and through Defendant's agents, classified Plaintiff in a manner that deprived her of an equal

employment opportunity that was provided to other non-black employees similarly situated in violation of 42 U.S.C. Section 2000e-2(a).

50.     Plaintiff was subjected to **racial harassment** because of her race and color in that Plaintiff, who is a black female, was subjected to ongoing and constant **racial harassment** in that she was the target of derogatory comments and remarks as described in paragraphs <u>11, 13, 15, 17-20, 23, 25, 26, 29, 30, 32 and 34</u> above. Plaintiff complained, yet her complaints were dismissed, and no remedial or disciplinary actions were taken.

51.     Plaintiff was subjected to **racial discrimination** because of her race and color in that Plaintiff, who is a black female, was subjected to ongoing and constant **racial discrimination** in that she was the target of discriminatory acts and/or omissions as described in paragraphs <u>10 through 34</u> above. Plaintiff complained, yet her complaints were dismissed, and no remedial or disciplinary actions were taken.

52.     Plaintiff alleges that WALT DISNEY WORLD PARKS AND RESORTS, instituted a campaign of retaliation which included employment termination. This retaliation was and is due to Plaintiff exercising Plaintiff's rights by complaining on numerous occasions and opposing discriminatory practice against her person because of her race and color of skin.

53.     There was a direct casual connection between Plaintiff's protected activities and Defendant's subsequent adverse actions against her. As a direct and proximate result of the aforementioned violations, Plaintiff has suffered physical injuries, loss of income, loss of benefits, loss of reputation, embarrassment and humiliation, inconvenience, loss of enjoyment of life, emotional pain and suffering, and severe

emotional distress and anguish.

**WHEREFORE**, Plaintiff demands the following relief: compensatory damages, lost benefits, lost income including back pay and front pay, prejudgment interest, attorney's fees pursuant to, inter alia, Section 760.11, Florida Statutes, and costs pursuant to the Florida Civil Rights Act, including section 760.11(5) a trial by jury and any other relief this court deems just and proper.

**COUNT III: VIOLATION OF TITLE VII**

**PLAINTIFF AGAINST SNI COMPANIES CORP**

**("Race" "Color")**

54.     Plaintiff adopts by reference, as if set out fully and completely in this Count, the following statements of this Complaint:  Paragraphs 1 through 35.

55.     Plaintiff has exhausted her administrative remedies as described in paragraph 5 above and therefore all conditions precedent to filing suit under Title VII have been met.

56.     Defendant, SNI COMPANIES CORPORATION d/b/a STAFFING NOW, by and through Defendant's agents, engaged in unlawful employment practices involving Plaintiff because of her race and color.

57.     Defendant, SNI COMPANIES CORPORATION d/b/a STAFFING NOW, by and through Defendant's agents, discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status because of Plaintiff's race and color in violation of 42 U.S.C. Section 2000e-2(a).

58.     Defendant, SNI COMPANIES CORPORATION d/b/a STAFFING NOW, by and through Defendant's agents, classified Plaintiff in a manner that deprived her of an equal employment opportunity that was provided to other non-black employees similarly situated in violation of 42 U.S.C. Section 2000e-2(a).

59.     Plaintiff was subjected to **racial harassment** because of her race and color in that Plaintiff, who is a black female, was subjected to ongoing and constant **racial harassment** in that she was the target of derogatory comments and remarks as described in paragraphs 11, 13, 15, 17-20, 23, 25, 26, 29, 30, 32 and 34 above. Plaintiff complained, yet her complaints were dismissed, and no remedial or disciplinary actions were taken.

60.     Plaintiff was subjected to **racial discrimination** because of her race and color in that Plaintiff, who is a black female, was subjected to ongoing and constant **racial discrimination** in that she was the target of discriminatory acts and/or omissions as described in paragraphs 10 through 34 above. Plaintiff complained, yet her complaints were dismissed, and no remedial or disciplinary actions were taken.

61.     There was a direct casual connection between Plaintiff's protected activities and Defendant's subsequent adverse actions against her. As a direct and proximate result of the aforementioned violations, Plaintiff has suffered physical injuries, loss of income, loss of benefits, loss of reputation, embarrassment and humiliation, inconvenience, loss of enjoyment of life, emotional pain and suffering, and severe emotional distress and anguish.

**WHEREFORE**, Plaintiff demands the following relief: compensatory damages, lost benefits, lost income including back pay and front pay, prejudgment interest,

attorney's fees and costs pursuant to Title VII, a trial by jury and any other relief this court deems just and proper.

## COUNT IV: VIOLATION OF SECTION 760, FLORIDA STATUTES
## PLAINTIFF AGAINST SNI COMPANIES CORP
### ("Race" "Color")

62.     Plaintiff adopts by reference, as if set out fully and completely in this Count, the following statements of this Complaint: Paragraphs 1 through 35.

63.     Plaintiff has exhausted her administrative remedies as described in paragraph 5 above and therefore all conditions precedent to filing suit under the Florida Civil Rights Act, 760.01 et seq. have been met.

64.     Defendant, SNI COMPANIES CORPORATION d/b/a STAFFING NOW, by and through Defendant's agents, engaged in unlawful employment practices involving Plaintiff because of her race and color.

65.     Defendant, SNI COMPANIES CORPORATION d/b/a STAFFING NOW, by and through Defendant's agents, discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status because of Plaintiff's race and color in violation of 42 U.S.C. Section 2000e-2(a).

66.     Defendant, SNI COMPANIES CORPORATION d/b/a STAFFING NOW, by and through Defendant's agents, classified Plaintiff in a manner that deprived her of an equal employment opportunity that was provided to other non-black employees similarly situated in violation of 42 U.S.C. Section 2000e-2(a).

67.     Plaintiff was subjected to **racial harassment** because of her race and color in that Plaintiff, who is a black female, was subjected to ongoing and constant **racial harassment** in that she was the target of derogatory comments and remarks as described in paragraphs 11, 13, 15, 17-20, 23, 25, 26, 29, 30, 32 and 34 above. Plaintiff complained, yet her complaints were dismissed, and no remedial or disciplinary actions were taken.

68.     Plaintiff was subjected to **racial discrimination** because of her race and color in that Plaintiff, who is a black female, was subjected to ongoing and constant **racial discrimination** in that she was the target of discriminatory acts and/or omissions as described in paragraphs 10 through 34 above. Plaintiff complained, yet her complaints were dismissed, and no remedial or disciplinary actions were taken.

69.     There was a direct casual connection between Plaintiff's protected activities and Defendant's subsequent adverse actions against her. As a direct and proximate result of the aforementioned violations, Plaintiff has suffered physical injuries, loss of income, loss of benefits, loss of reputation, embarrassment and humiliation, inconvenience, loss of enjoyment of life, emotional pain and suffering, and severe emotional distress and anguish.

**WHEREFORE**, Plaintiff demands the following relief: compensatory damages, lost benefits, lost income including back pay and front pay, prejudgment interest, attorney's fees pursuant to, inter alia, Section 760.11, Florida Statutes, and costs pursuant to the Florida Civil Rights Act, including section 760.11(5) a trial by jury and any other relief this court deems just and proper.

DATED this 5 day of February 2015.

By: **/S/ Frank T. Allen**
  FRANK T. ALLEN, ESQUIRE
  Florida Bar No.: 0033464
  **THE ALLEN FIRM, P.A.**
  A Professional Association
  605 E. Robinson Street, Suite 130
  Orlando, FL 32801
  Tel. (407) 481-8103
  Fax (407) 481-0009
  E-Mail: ALLENF551@aol.com
  Trial Counsel and Attorneys for Plaintiff


By: **/S/ Jesus Irizarry**
  JESUS IRIZARRY, ESQUIRE
  **IRIZARRY MENDEZ PL**
  Florida Bar No.: 103542
  P.O. Box 771713
  Orlando, FL 32877
  Tel. (321) 300-4529
  Fax (888) 901-4529
  E-Mail: ImLaw@BufeteIrizarry.com
  Trial Counsel and Attorneys for Plaintiff